**JAMESBURY CORP.**

v.

**LITTON INDUSTRIAL PRODUCTS, INC.**

Civ. No. H–76–79.

United States District Court, D. Connecticut.

Feb. 18, 1977.

J. Read Murphy, Murtha, Cullina, Richter & Pinney, Hartford, Conn., Robert C. Miller, Oblon, Fisher, Spivak, McClelland & Maier, Arlington, Va., for plaintiff.

Thomas F. Parker, William A. Taylor, Gross, Hyde & Williams, Hartford, Conn., for defendant.

## RULING ON PENDING MOTION

BLUMENFELD, District Judge.

In this suit for infringement of United States patent # 2,945,665 relating to the manufacture of ball valves, the defendant, Litton Industrial Products, Inc., Contromatics Division ("Contromatics"), has moved to dismiss on the grounds of laches and estoppel. Because both parties have presented for the court's consideration affidavits and other matters outside the pleadings, the motion shall be treated as one for summary judgment in accordance with Rule 12(b), Fed.R.Civ.P.

The disputed Jamesbury patent was issued July 19, 1960. Beginning in 1963, and continuing to the present, Jamesbury has engaged in a series of litigations in the United States district courts designed to enforce this patent and protect it from infringement. First, Jamesbury brought suit against the United States in the Court of Claims. In May 1965, Jamesbury started actions against Worcester Valve in the District Court for Massachusetts and against the Lunkenheimer Company in the Southern District of Ohio. On July 18, 1966, E. W. Bliss Company intervened in the Worcester Valve litigation claiming it was in fact the owner of the Jamesbury patent. All three suits for infringement were stayed pending a decision as to the rightful owner of the patent. In addition in October 1970, Jamesbury commenced an action for infringement against Kitamura Valve Manufacturing Company in the Southern District of Texas.

The United States Court of Appeals for the First Circuit held in May 1971 that Jamesbury, not E. W. Bliss Company, was the owner of patent # 2,945,665. *Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205 (1st Cir. 1971). Following this determination, the Worcester Valve suit was settled, but the Lunkenheimer and Kitamura actions were stayed pending the outcome of the infringement and validity claims against the United States. A judgment by the United States Court of Claims that the Jamesbury patent was both valid and infringed became final on October 9, 1975. *Jamesbury Corp. v. United States*, 518 F.2d 1384 (Ct.Cl.1975). This suit against Contromatics was commenced in February 1976.[1]

Jamesbury had first contacted UTD Corporation, a predecessor of Litton Industries, on October 12, 1967, alleging an infringement by the Contromatics Division of the ball valve patent and offering to negotiate

---

1. The Lunkenheimer and Kitamura litigations are still pending.

a licensing agreement.[2] In a later letter dated November 17, 1967, Howard Freeman, President of Jamesbury, informed Contromatics that Jamesbury was then suing the United States in the Court of Claims to establish the validity and infringement of its patent. Contromatics was at that time a supplier of ball valves to the federal government. The parties met on December 14, 1967, but came to no agreement. On January 5, 1968, Freeman wrote back to Contromatics saying, "We have reported your position to our attorneys and the subject is under careful consideration."[3] It is undisputed that Contromatics received no further correspondence from Jamesbury until the filing of the instant law suit in February 1976. Contromatics argues that relying upon Jamesbury's eight years of inaction, it expanded its production of ball valves, increased capital expenditures, purchased new manufacturing facilities, and transferred ownership of the division. Based on such delay and prejudice, Contromatics contends that this action should be dismissed for laches and estoppel.

## I.

■ The law is clear that in a suit brought for infringement of a patent, "laches requires that there be, in the light of all the existing circumstances, an unreasonable delay resulting in prejudice to the other party." *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1122 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974). *See also, Esso Research & Engineering Co. v. Kahn & Čo., Inc.*, 159 U.S.P.Q. 658, 659 n.1 (D.Conn.1968). In this case, plaintiff claims its delay should be excused because it was engaged in other litigation. As Judge Learned Hand explained in *Clair v. Kastar, Inc.*, 148 F.2d 644, 646 (2d Cir.), *cert. denied*, 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 459 (1945):

"While a patentee is getting his patent sustained he is not bound to assert his claims to their fullest scope by suing every conceivable infringer. . . . [I]f a manufacturer fears that he will be charged to infringe, he can always inquire of the patentee, and if the answer is unsatisfactory, he can bring an action for declaratory judgment."

*Cf. Langdon v. Saltser & Weinsier, Inc.*, 288 F.2d 50, 53 (2d Cir. 1961). Although the defendant acknowledges the privileged delay recognized in *Clair v. Kastar*, Contromatics maintains that because Jamesbury failed to notify it in 1968 of its intent to sue, plaintiff cannot take advantage of the other litigation doctrine.

■■ The effect of other prior pending litigation as a defense to a claim of laches in a patent suit has recently caused controversy both among and within the Circuits. *Compare: American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974) *with Jenn-Air Corporation v. Penn Ventilator Co.*, 464 F.2d 48 (3d Cir. 1972); *Advanced Hydraulics, Inc. v. Otis Elevator Company*, 525 F.2d 477 (7th Cir. 1975) *with Maxon Premix Burner Co., Inc. v. Eclipse Fuel Eng. Co.*, 471 F.2d 308, 313 (7th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 591 (1973). Each of the above courts has recognized that prior litigation may excuse delay in an infringement suit; they have differed though on what preliminary notice a plaintiff must extend to an infringer in order to come within the doctrine. The rationale for the other litigation exception is that a suit pending to establish the validity of a patent is notice to all infringers of the patentee's intention to enforce his rights. *Armstrong v. Motorola, Inc.*, 374 F.2d 764 (7th Cir.), *cert. denied*, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967). Resolving all ambiguities and disagreements in favor of the party against whom summa-

---

**2.** There is no claim by defendant that plaintiff knew or should have known prior to 1967 of any possible infringement by Contromatics.

**3.** Exhibit E to Defendant's Memorandum in Opposition to Plaintiff's Motion under Rule 56(f), Fed.R.Civ.P.

ry judgment is sought, *cf. United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), I find that plaintiff has at least presented a question of fact as to whether its 1967–68 actions were sufficient notice of Jamesbury's intention not to acquiesce in any infringement and so overcome a defense of laches in this case.

Jamesbury informed Contromatics that the defendant's valves infringed the patent in 1967. In addition, plaintiff notified the defendant of the pendency of the action against the United States in the Court of Claims. Contromatics was a supplier of ball valves to the United States. At oral argument, Jamesbury contended that Contromatics was aware that its own valves were involved in the Court of Claims suit.[4] These facts together with the letter of January 5, 1968, in which Freeman told Contromatics that he was referring the matter to Jamesbury's attorneys should have put the defendant on notice that plaintiff did not intend to sleep on its rights, but rather was pursuing a suit for infringement in which valves manufactured by Contromatics might be implicated.

Relying on the Second Circuit's unpublished affirmance in *Jones v. Ceramco, Inc.*, 387 F.Supp. 940 (E.D.N.Y.), *aff'd*, 526 F.2d 585 (2d Cir. 1975), defendant contends that the notice given it was fatally defective because Jamesbury did not explicitly indicate that it planned to sue Contromatics. This reliance is misplaced. In *Jones*, it appears that plaintiff never notified the defendants of any claim of infringement during the twelve year delay at issue. Although Judge Platt quoted with approval certain language in *American Home Products, supra*, he noted that the critical factor is whether plaintiff provided the defendant with adequate notice "of his intention to enforce his rights under the patent when he had perfected his title thereto." 387 F.Supp. at 942. Mr. Justice Clark, sitting on the Seventh Circuit, suggested that "the better practice is that notice of 'other litiga-

tion' must be given to all known parties who are thought to be infringers . . ." *Advanced Hydraulics, Inc. v. Otis Elevator Company, supra*, 525 F.2d at 481. In this case, plaintiff complied with Justice Clark's admonition. It informed Contromatics of a claim of infringement, of the pending litigation, and of the fact that Contromatics-supplied valves might be at issue in that litigation. While Jamesbury may never have told Contromatics it was going to sue it as might be required by the Sixth Circuit, it seems to me that viewing the evidence in the light most favorable to plaintiff, Jamesbury did indicate that it intended to protect its rights under the patent.

## II.

The analysis is similar regarding the defense of estoppel. Like laches, estoppel requires an unexcused delay prejudicial to the defendant. Estoppel, however, incorporates an additional element of reliance on the plaintiff's inaction. Moreover, where laches would only forbid the plaintiff from recovering any damages for infringement arising prior to the filing of the law suit, estoppel would act as a total bar to enforcement of the validity of the patent. *Cf. Continental Coatings Corporation v. Metco. Inc.*, 464 F.2d 1375, 1379 (7th Cir. 1972).

I note therefore that plaintiff has raised a second issue of fact concerning Contromatics' reliance in expanding production and facilities. Jamesbury, citing *Armstrong v. Motorola, supra*, and *Duval Sulphur & Potash Co. v. Potash Co. of America*, 244 F.2d 698 (10th Cir. 1957), argues that defendant relied on an opinion of counsel as to noninfringement, not on any delay by plaintiff, in increasing operations. Although I think it may be difficult for plaintiff to bear the burden of persuasion on this issue, Jamesbury has, however, shown the existence of a material fact as to defendant's reliance adequate to withstand

---

**4.** This is not unlikely given the meeting that took place between both firms in December 1967. Defendant has offered no affidavit or documentary evidence to show what occurred at this meeting.

summary judgment.[5] This remedy as Chief Judge Kaufman emphasized in *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975), is a drastic device whose "prophylactic function, when exercised, cuts off a party's right to present his case to the jury."

Because I find that there are triable issues of fact going to the defenses of laches and estoppel, summary judgment in favor of either party is precluded. Defendant's motion is denied.

SO ORDERED.

---

**5.** There is authority that suggests that once the plaintiff has delayed more than six years in suing for infringement, the burden shifts to it to demonstrate the delay was excused and did not prejudice the defendant. *Continental Coatings Corp. v. Metco. Inc., supra; Baker Manufacturing Co. v. Whitewater Manufacturing Co.*, 430 F.2d 1008 (7th Cir. 1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971).