**JAMESBURY CORP.**

v.

**LITTON INDUSTRIAL PRODUCTS, INC.**

Civ. No. H–76–79 (PCD).

United States District Court, D. Connecticut.

Nov. 5, 1986.

J. Read Murphy, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for plaintiff.

Michael J. Dorney, Tyler, Cooper & Alcorn, New Haven, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

In this suit for infringement of United States Patent No. 2,945,666 ("666") relating to the manufacture of ball valves, defendant has moved for summary judgment on the three issues: laches, estoppel and prejudgment interest.

*Facts*

The patent was issued to plaintiff on July 19, 1960. Since 1962, plaintiff has conducted a series of suits to enforce its patent rights. The first was brought against Pacific Valves, Inc. on February 9, 1962, in New Jersey. On July 10, 1963, plaintiff sued the United States in the Court of Claims, listing defendant's predecessor in interest, UTD Corporation, Contromatics Division ("Contromatics"), and nine other corporations as manufacturers violating plaintiff's patent and with whom the United States did business. On April 28, 1965, the Pacific Valves' suit was settled and dismissed.

On May 18, 1965, plaintiff filed suit against Worcester Valve in the District Court of Massachusetts and against Lunkenheimer Company in the Southern District of Ohio on June 2, 1965. Worcester Valve had been named as an infringer in the Court of Claims action. On May 16, 1967, a preliminary decision was entered by the Court of Claims finding the patent valid and infringed by the United States' purchases of Worcester Valve and Electric Boat Division valves. On October 30, 1970, plaintiff filed a declaratory judgment action against Kitumora Valve Mfg. Company in the Southern District of Texas.

The United States Court of Appeals for the First Circuit held in May of 1971 that Jamesbury, not E.W. Bliss Company (an intervenor in the District of Massachusetts litigation) was the rightful owner of patent 666. *Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205 (1st Cir.1971). On March 2, 1972, the Worcester Valve litigation was settled. The decision by the United States Court of Claims holding Jamesbury's patent valid and infringed became final on October 9, 1975. *Jamesbury Corp. v. United States*, 207 Cl.Ct. 516, 518 F.2d 1384 (1975).

When plaintiff supposedly became aware of the manufacture of ball valves allegedly infringing on plaintiff's patent by Contromatics, it contacted Contromatics on October 12, 1967, alleging infringement and offering to negotiate a settlement. On No-

vember 17, 1967, Howard Freeman, President of Jamesbury Corp., informed Contromatics that Jamesbury was then suing the United States to establish the validity of its patent. The parties met on December 14, 1967, but did not resolve their dispute. On January 5, 1968, Freeman wrote to Contromatics saying that the matter had been referred to its attorneys for consideration. Contromatics received no further communication from Jamesbury until the filing of the instant lawsuit.

The suit against Litton Industries was commenced in this court in February 1976. Defendant moved for dismissal on the grounds of laches and equitable estoppel. Judge Blumenfeld, treating the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56, denied the motion because there were questions of fact in dispute. *Jamesbury Corp. v. Litton Indust. Products, Inc.*, 427 F.Supp. 756 (D.Conn.1977).

Defendant later moved for summary judgment on the ground of plaintiff's overclaiming. Judge Blumenfeld granted the motion, *Jamesbury Corp. v. Litton Indust. Products, Inc.*, 442 F.Supp. 266 (D.Conn. 1977), but was subsequently reversed by the Second Circuit Court of Appeals, 586 F.2d 917 (2d Cir.1978), *cert. denied*, 440 U.S. 961, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979). On remand, the case went to trial, where in answers to special interrogatories, the jury decided that the patent was invalid. It did not, therefore, decide the defenses of laches and estoppel. On appeal, the Federal Circuit reversed the jury's verdict on the issue of the patent's validity and granted judgment n.o.v. to plaintiff. *Jamesbury Corp. v. Litton Indust. Products, Inc.*, 756 F.2d 1556 (Fed.Cir.1985). The case was remanded for consideration of the laches and estoppel defenses. Defendant now moves for summary judgment raising three issues: laches, estoppel and prejudgment interest.

*Discussion*

I. *Law of the Case*

Plaintiff contends that the law of the case was established by the denial of de-

fendant's motion for a directed verdict at trial and the denial of defendant's original motion for summary judgment. 427 F.Supp. at 760.

A directed verdict, Fed.R.Civ.P. 50(a), is appropriate: (1) where there is no proof on an issue material to the cause of action; and (2) where there are no disputed issues upon which reasonable men could differ. 5A, J. Moore, *Moore's Federal Practice*, ¶ 50.02 (1984). Caution is the rule with motions for directed verdicts. It "is in the best interests of efficient judicial administration for the trial judge to refrain from considering a motion for a directed verdict in favor of deciding a motion for judgment n.o.v." *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 166 n. 2 (2d Cir.1980). If a judgment n.o.v. is overturned on appeal the entire case does not then have to be retried. Hence, the denial of a directed verdict cannot be held to have conclusively addressed the arguments raised by defendant.

Similarly, the decision on defendant's original motion for summary judgment is not conclusive.

> [O]n a renewed motion for summary judgment before a second judge, the district court must balance the need for finality against the forcefulness of any new evidence and the demands of justice. With respect to a non-appealable denial of summary judgment, the law of the case is not a limit on the court's jurisdiction, but a rule or practice which may be departed from in the sound discretion of the district court.

*Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir. 1979), citing *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131 (2d Cir.1956). The nine year history of this case after the original denials requires this court to consider all developments, including any new facts in the record in deciding this motion.

## II.  *Laches*

■ Defendant first argues that plaintiff's unreasonable delay in prosecuting this case entitles defendant to judgment on the basis of laches. Laches does not bar a patent action; rather, it bars pre-filing damages. *Leinoff v. Louis Milona & Sons*, 726 F.2d 734 (Fed.Cir.1984). "[T]o assert the defense of laches, the defendant must prove two essential elements: (1) unreasonable and inexcusable delay in the assertion of the claim; and (2) material prejudice to the defendant resulting from this delay, but the longer the delay, the less need there is to show specific prejudice." *Id.* at 741. The burden of proving unreasonable delay is on the defendant. Delay beyond the six year statutory limitation[1] raises a presumption against enforcement, the effect of which was to pass the burden of disproving unreasonableness to the plaintiff. *Id.; accord Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1265 (7th Cir.1982).

A patentee's involvement in other enforcement litigation may constitute a reasonable excuse for his failure to prosecute his patent against alleged infringers. *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 700 (7th Cir.1982); *In re Yarn Processing Patent Validity Litigation*, 602 F.Supp. 159, 169 (W.D.N.C.1984). Judge Blumenfeld recognized the "litigation excuse" in his decision on the first summary judgment in this case, 427 F.Supp. at 758. However, the law is unclear as to "what preliminary notice a plaintiff must extend to an infringer in order to come within the doctrine." *Id.* at 758. On the one hand, patentees have been required to notify alleged infringers of the intent to sue. *A.C. Aukerman*, 693 F.2d at 700; *Jensen v. Western Irrigation & Mfg., Inc.*, 650 F.2d 165, 168 (9th Cir.1980). On the other hand, courts have held that, as long as the infringer is on notice of the alleged infringement and that the patentee

---

**1.**  While 35 U.S.C. § 286 (1986) technically only limits the amount of damages one may recover to that amount incurred within six years of the filing of the complaint, this statute has universally been viewed as the basis for determining that the proper equitable statute of limitations in a patent case is six years. *Leinoff*, 726 F.2d at 741; *accord Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 206 U.S.P.Q. 577 (5th Cir.1980).

is pursuing the validity of his patent in other litigation, the delay as to other infringers is justified. *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 481 (7th Cir.1975); *Jamesbury Corp.*, 427 F.Supp. at 759.[2] Here, under either standard, plaintiff has failed to rebut the presumption.

■ The laches defense in a patent infringement case requires the court to balance the equities.

> It is seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it is inequitable for a person to sleep on his rights for years and lead another to think that the latter is safe in following counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made extensive investments and built up a prosperous business, penalize him and innocent investors for doing what might have been averted by timely action.

*Rome Grader & Machinery Corp. v. J.D. Adams Mfg. Co.*, 135 F.2d 617, 619 (7th Cir.1943). When suit is brought more than six years after the alleged infringement is noticed, the burden is placed on the "patentee to demonstrate that the delay was reasonable and that the defendant was not prejudiced." *Leinoff,* 726 F.2d at 741–42.

The original motion was decided on the following facts:

1. On October 12, 1967, plaintiff alleged that defendant's predecessor in interest, Contromatics, was violating plaintiff's patent and offered to negotiate a license.

2. On November 17, 1967, plaintiff's president, Mr. Freeman, wrote to defendant to inform it that plaintiff "was then suing the United States in the Court of Claims to establish the validity and infringement of its patent."

3. On December 14, 1967, the parties discussed the patent issue without resolution. It was at this meeting that plaintiff apparently informed defendant that, as a supplier to the United States, defendant's ball valve also might be in issue in the Court of Claims.

4. On January 5, 1968, Freeman wrote back to defendant informing them that: "We have reported your position to our attorneys and the subject is under careful consideration."

*See* 427 F.Supp. at 757–59. Defendant's motion for summary judgment was denied as defendant was on notice that plaintiff "did not intend to sleep on its rights." *Id.* at 759.

Defendant now raises the following as undisputed facts, resulting from the subsequent proceedings herein:

(a) No later than July of 1963, "Jamesbury became aware that Contromatics manufactured a ball valve that possibly infringed the patent-in-suit." Plaintiff's response to Discovery Request 19.

(b) Jamesbury amended its complaint in the Court of Claims case to identify Contromatics, along with nine other manufacturers, as infringers with whom the United States had done business. Plaintiff's response to Discovery Requests 17, 18; Jamesbury Admissions Nos. 22, 23.

(c) Worcester Valve, defendant in the 1965 Massachusetts infringement suit, was named as an infringer in the amended Court of Claims complaint.

(d) Since the initiation of the Court of Claims case, other alleged infringers have been individually sued, the last of which was filed in 1970. Jamesbury Admissions Nos. 24, 25 and 29. *See* defendant's brief at 13–15.

■ Defendant's argument that, because plaintiff has either sued or settled with other alleged infringers, it never had any intention of suing defendant must be

---

**2.** While not directly discussing the issue, the Federal Circuit Court of Appeals noted that the "litigation excuse" may provide a reasonable justification for rebutting the presumption of unreasonable delay provided the "infringers understood there was no intent to condone their infringements." *Leinoff,* 726 F.2d at 742.

rejected for the very grounds for which the "litigation excuse" exists—"the high cost of patent litigation and the comparatively moderate amounts recoverable" justifies piecemeal suit of a number of cases. *Leinoff*, 726 F.2d at 742. "Patentees have no obligation to sue all alleged infringers at the same time." *A.C. Aukerman*, 693 F.2d at 700. The same is true of plaintiff's conduct from 1965–1976. As a review of the undisputed facts reveals, there was an issue as to Jamesbury's ownership of the patent-in-suit, which was apparently not fully resolved until September 20, 1974. Jamesbury's delay, on these facts, cannot be found to have been unreasonable.

While plaintiff's activities between 1965 and 1976 may have been justified on the basis of its reliance on the "litigation excuse," they do not resolve plaintiff's obligation of notice to defendant. As Judge Blumenfeld noted in his denial of the first motion for summary judgment, the critical issue is the manifestation of the patentee's intent with regard to the defendant. The new facts cast serious doubt on plaintiff's assertion that it provided defendant with adequate notice. Plaintiff knew Contromatics was allegedly violating its patent in 1963, more than four years before it contacted defendant in 1967. Indeed, Contromatics was listed in the Court of Claims case, commenced July 10, 1963, as a manufacturer of the ball valves alleged to have violated plaintiff's patent and purchased by the United States. Interestingly, Judge Blumenfeld raised the pre–1967 notice issue as a concern in his decision on defendant's earlier motion. 427 F.Supp. at 758, n. 2. These added facts, coupled with the 1967–1968 meetings and correspondence, compel the conclusion that plaintiff either condoned defendant's allegedly illegal behavior or, at the very most, unreasonably delayed the decision to vindicate its claim in court. As plaintiff was aware of its activities for four years and with no objection prior to their 1967 meetings, it was entirely reasonable for defendant to believe that whatever the resolution of the Court of Claims suit, plaintiff was not going to sue defendant. The reasonableness of such a conclusion is apparent in light of the fact that plaintiff's attorney, to whom defendant communicated its disagreement with the allegation of patent infringement, thereafter never communicated further with defendant on the subject for over eight years. Such silence could reasonably lead to the conclusion that, after "careful consideration," plaintiff had either decided that there was no infringement or that it chose instead to ignore defendant's violation as it had for the four years, 1963–1967. "For the price of a postcard and a stamp, [Jamesbury] could have provided these defendants with notice...." *In re Yarn*, 602 F.Supp. at 171–72. Over the course of twelve years, except for the brief flurry in 1966–1967, plaintiff did nothing to suggest to defendant that its continuing activity was creating a risk for a claim of infringement.

The second prong of laches is proof of material prejudice to defendant resulting from the patentee's delay in asserting his claim. *Leinoff*, 726 F.2d at 741. Delay exceeding six years is again presumptively prejudicial and shifts to the plaintiff the burden of disproving prejudice. *Id.* at 742; *Studiengesellschaft*, 616 F.2d at 1326. Plaintiff has offered no rebuttal of the presumption from the delay in bringing suit. The only evidence on the issue was that of defendant's president, John Kempton, that, had he been president of Contromatics in 1967–1968 and known of plaintiff's allegation of infringement, he would have sold the corporation rather than make continued capital investments. Trial Transcript, 4–106 to 4–107. *Jamesbury*, 427 F.Supp. at 759 (illustrating Judge Blumenfeld's doubt as to the ability of plaintiff to prove that defendant did not rely on plaintiff's delay in expanding its operations). Those investments, even without the aid of the presumption, constitute material prejudice to defendant which plaintiff has not controverted. *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1378 (7th Cir.1972).

Defendant's motion for summary judgment on the ground of laches is grant-

ed. Plaintiff may not recover damages occurring prior to the filing of its complaint.

## III. *Equitable Estoppel*

Defendant's second argument is that plaintiff's behavior equitably estops the prosecution of this case. Unlike laches, equitable estoppel is a complete bar to a plaintiff's suit. Equitable estoppel requires proof of four elements: "(1) an unreasonable and unexcused delay ... (2) prejudice to the defendant ... (3) affirmative conduct by the patentee inducing the belief that it had abandoned its claims against the alleged infringer; and (4) detrimental reliance by the infringer." *A.C. Aukerman Co.*, 693 F.2d at 701; *Young Engineers, Inc. v. U.S. Int'l Trade Commission*, 721 F.2d 1305, 1317 (Fed.Cir. 1983). The first two elements are found as they were the basis of the laches defense upheld above.

> Mere lapse of time, without more, is not sufficient to ground a defense to estoppel ..., but notice from a patentee to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of nonenforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned.

*A.C. Aukerman Co.*, 693 F.2d at 701–02 (citations omitted); *accord Jensen*, 650 F.2d at 169; *Continental Coatings Corp.*, 464 F.2d at 1378–79. The third element of equitable estoppel is present here.[3] Plaintiff knew of defendant's alleged infringement for four years before it first contacted defendant in 1967. Plaintiff concluded its communications with defendant in 1967 and 1968 with the stated intention to give "careful consideration" to the matter. Thereafter, for eight years, plaintiff did nothing. Plaintiff's short assertion of its claim of infringement over the course of twelve years would most certainly constitute a sound basis for a conclusion either that plaintiff had abandoned its claim or determined to condone defendant's infringement.[4] In turn, defendant could well have concluded, as it claims, that its business would be "unmolested," *Continental Coatings*, 464 F.2d at 1380, i.e. that its continued course of conduct was not going to result in liability to plaintiff for the profits generated by its efforts.

The final element necessary for equitable estoppel is detrimental reliance by defendant on plaintiff's activity. Plaintiff, in response to defendant's original motion for summary judgment, argued that it was a question of material fact whether defendant relied on its claim of non-infringement or on the belief that the absence of an active pursuit of plaintiff's rights meant it had abandoned its claim. *Jamesbury*, 427 F.Supp. at 759. Interestingly, Judge Blumenfeld predicted then what is apparent today. "I think it may be difficult for plaintiff to bear the burden of persuasion on this issue." *Id.* Nine years later, after extensive discovery and a full trial, plaintiff has still produced no evidence in support of its burden in this regard. Defendant has come forth with evidence documenting its investment in the manufac-

---

**3.** Plaintiff claims that defendant cannot satisfy this element because Litton was not aware of the 1967 communications between plaintiff and Contromatics when Litton acquired Contromatics. Plaintiff's argument is inherently inconsistent. If Litton is not deemed privy to the 1967–68 meeting and correspondence between Jamesbury and Contromatics then it is clear that Litton was never notified of the possible patent infringement over the course of nine years. Under such circumstances, both the laches and equitable estoppel defenses would prevent plaintiff from now trying to reap the profits of defendant's established business as the successor in interest to Contromatics. The better argument is that Litton stepped into the shoes of Contromatics and is liable for any knowledge that may be imputed to that firm, but also is entitled to rely on the absence of communication both to Contromatics and to it, especially in view of the fact that apparently Contromatics, along with its employees, was actually subsumed into Litton with little change other than the name on its business cards.

**4.** Indeed, the facts of this case mirror closely the facts of *Naxon*, 686 F.2d at 1265–67, and *A.C. Aukerman Co.*, 693 F.2d at 701–02, in both of which the plaintiffs were estopped from suing the defendants.

ture of the ball valves and the resulting income. Trial Transcript, 4.103 to 4–105. The fourth element of equitable estoppel has been met. *See A.C. Aukerman Co.,* 643 F.2d at 702 (holding fourth element satisfied on similar facts).

The decision on laches and equitable estoppel makes it unnecessary to reach the claim prejudgment interest.

Defendant's motion for summary judgment on the issues of laches and equitable estoppel is granted.

SO ORDERED.