**CLAIR et al. v. KASTAR, Inc.**

No. 280.

Circuit Court of Appeals, Second Circuit.

April 6, 1945.

See, also, 58 F.Supp. 378.

Munn, Liddy & Glaccum and John H. Glaccum, all of New York City, and C. W. Prince, of Kansas City, Mo., for appellants.

Lackenbach & Hirschman, Joseph Hirschman, and Armand E. Lackenbach, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment entered after remand to the District Court upon the reversal of a former judgment for the plaintiffs. 2 Cir., 138 F.2d 828. Upon the first appeal we held that the defendant was concluded by the judgment of the Eighth Circuit in what we shall call the "Otis actions," (Montgomery Ward & Company v. Clair, and Sears Roebuck & Company v. Clair, 8 Cir., 123 F.2d 878), to which it was privy, and which had held valid and infringed Claim Two of Patent No. 1,577,821 to Campbell. This would have led to an affirmance of the judgment for the plaintiffs in the case at bar, holding the same claim valid and infringed, except for the fact that they had failed to disclaim Claims One and Three after the Circuit Court of Appeals had upheld Claim Two. We held that the continued validity of Claim Two depended upon an issue not decided upon the first trial: i.e. whether, when the plaintiffs withdrew Claims One and Three in the "Otis actions," as they did, the infringing "stabilizers" which the court in those actions held to infringe "Claim Two" also "infringed either of those claims, or what is in effect the same thing, whether there was any substantial difference between them and claim two." We also left open as defences whether the judgment in the "Otis actions" had been obtained by fraud, (that defense has now been abandoned), and whether the plaintiffs were guilty of laches in prosecuting the present defendant. So far as may be necessary to an understanding of our present discussion we may refer to what we said before, and assume a familiarity with the patent. The only question of any importance is that just stated: whether the "stabilizers" in the "Otis actions"—Exhibits 73 and 74—infringed Claims One or Three; and, perhaps also, whether, if they did not, there was nevertheless a fair enough chance that the court might hold them to infringe those claims, to require the plaintiffs to press them at that time. We shall not repeat the reasons which led to regard this as the critical issue, and will confine our discussion to its answer.

Exhibit 73—which was the same in the "Otis actions" and in the case at bar —was an embodiment of the disclosure of the Perkins patent—No. 1,791,972—; Exhibit 74 was an embodiment of the disclosure of the Stark patent—No. 1,993,572. In the first the "stabilizer" was fixed to the connecting rod, and the ends of the springs bore upon the axle; in the second, vice versa. Neither engaged the "spindle arm" directly; any "bearing" against the arm—

one element of Claim Three, as well as of Claim Two—was not the result of contact. The Eighth Circuit nevertheless found the Perkins "stabilizer" an equivalent, "because the spring in No. 73, although not directly connected with the spindle arm, does through the connecting rod to which it is attached, bear against the spindle arm," 123 F.2d 878, at page 882. That is to say, the spring of Exhibit No. 73 transmitted pressure to the spindle arm; and, if so, it need not be in contact with it. That was obviously right, because in figure five of the patent the spring did not touch the spindle arm, unlike figures one, two and three, (page 1, lines 82–84). The Eighth Circuit also held that the pressure of the spring in Exhibit No. 73 was "uniform," apparently on the theory that it was a constant pressure. Again, this was right, for the word, "uniform," was used as an equivalent of "constant," as appears from the specification (page 1, line 84). Moreover, the springs in the Campbell patent did not themselves exert a "uniform," if by that is meant an unvarying, pressure. Exhibit No. 74 did not differ in these respects from No. 73; and it was plain therefore that even without resort to equivalents both "stabilizers" infringed Claim Two.

■ On the other hand neither exhibit infringed Claims One or Three, for each of these contained a structural element absent from both exhibits: "a spring between the arms of said forked end" of the connecting rod. That was the only element, except "uniform pressure," that distinguished Claim Two from Claim Three; and one of the two that distinguished Claim Two from Claim One. To hold that either "stabilizer" infringed Claim Three we should therefore have entirely to disregard the only difference between it and Claim Two except an element, which really added nothing because it was inevitable in any "stabilizer" of the spring type. Moreover, it appears to us plain that Claim Two was meant to cover the invention in a generalized form, while Claims One and Three were meant to cover it, if a court were to find invention only in the structure, actually disclosed. Obviously, it was in no sense a

pioneer, and there was very little, if any, room for equivalents; indeed, if there had been, we cannot understand what equivalent could be found in either "stabilizer" for so specific a structural detail. We have suggested, though we do not decide, that the plaintiffs were also under a duty to press these claims in the "Otis actions," even though we concluded that they would have been unsuccessful, had they done so. If they were under such a duty, it could only arise in case we thought that the effort had some reasonable chance of success. We can only repeat the reasons which we have just given to show that the exhibits did not in fact infringe; and add that they seem to us so plain as to excuse the plaintiffs from the attempt. For these reasons we hold that they were right to withdraw Claims One and Three from the "Otis actions," and that the defendant was estopped by the judgment.

■■ The defence of laches is without merit. The plaintiffs sued the Western Supply Company in 1933, two years after the defendant brought out Exhibit No. 73, although it was not involved in that action. (Exhibit No. 74 had not yet appeared). The plaintiffs could not know in advance whether their patent was good at all; and were not obliged, as the Eighth Circuit held, to sue everyone whom they might afterwards seek to bring within their patent. Again, although they lost in 1937 before Judge Collet, they appealed at once, and brought the "Otis actions" as soon as that appeal had been settled. While a patentee is getting his patent sustained he is not bound to assert his claims to their fullest scope by suing every conceivable infringer. There is today some reciprocity of duty in this regard; if a manufacturer fears that he will be charged to infringe, he can always inquire of the patentee, and if the answer is unsatisfactory, he can bring an action for a declaratory judgment. The time has now passed when a patentee may sit by and refuse to show his hand. The defendant's putative uncertainties seem to us to have been of its own making.

Judgment reversed; judgment for an accounting will be entered.