JAMESBURY CORP.

v.

LITTON INDUSTRIAL PRODUCTS, INC.

Civ. No. H–76–79.

United States District Court, D. Connecticut.

Nov. 28, 1977.

As Amended Dec. 2, 1977.

J. Read Murphy, Murtha, Cullina, Richter & Pinney, Hartford, Conn., Robert C. Miller, Oblon, Fisher, Spivak, McClelland & Maier, Arlington, Va., for plaintiff.

Thomas F. Parker, Gross, Hyde & Williams, William A. Taylor, Hartford, Conn., John A. Diaz, Morgan, Finnegan, Pine, Foley & Lee, J. Robert Dailey, New York City, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is an action for alleged infringement of U.S. Patent No. 2,945,666 entitled "Ball Valve." The patent issued on July 19, 1960, and expired on July 19, 1977. The patent has been the subject of active litigation since 1963.[1] The Court of Claims upheld the validity of claims 7 and 8,[2] which the defendant is accused of infringing, *Jamesbury Corp. v. United States*, 518 F.2d 1384,

---

1. The issue of ownership of the patent, as distinguished from validity, was decided in favor of Jamesbury Corp. in *Jamesbury Corp. v. Worcester Valve Co.*, 318 F.Supp. 1 (D.Mass. 1970), *aff'd*, 443 F.2d 205 (1st Cir. 1971).

2. These claims are as follows:
"7. A ball valve comprising: a casing adapted to be connected to a pipe line and having a valve chamber and inlet and outlet openings; a ball mounted in said chamber and having a port; and a sealing ring mounted in said chamber around one of said openings, said ring having a lip projecting inward toward the axis of the ring and engaging the

ball, said lip being free to bend in the axial direction of the ring and increasing in thickness outward in the radial direction of the ring, and said ball being rotatable between an open position in which said port is in register with the opening surrounded by said ring and a closed position.
"8. A ball valve as described in claim 7, said lip having side faces disposed one toward the ball and one away from the ball, and said faces diverging from each other substantially uniformly outward in the radial direction of the ring."

207 Ct.Cl. 516 (1975), against a challenge that they failed to meet the requirements of patentability set forth in 35 U.S.C. § 103.[3]

The defendant in this case, however, moves for summary judgment on the ground that claims 7 and 8 are invalid for overclaiming.

## I.

The fact that the '666 patent has been previously held valid does not serve to dispose of this action, for the defense of overclaiming was neither raised nor litigated. *Holstensson v. V–M Corp.*, 325 F.2d 109 (6th Cir. 1963), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1646, 12 L.Ed.2d 736 (1964) is instructive on this point. The patent at issue in *Holstensson* had previously been held valid in *Holstensson v. Webcor, Inc.*, 150 F.Supp. 441 (N.D.Ill.1957). Following that decision everyone but V–M Corp. took a license under the patent. 325 F.2d at 119. The patent was again upheld in a suit for infringement against V–M, which raised an additional defense of overclaiming. The Court of Appeals reversed and held the patent invalid on the ground that the patentee had overclaimed.

## II.

The same patent claims in issue here were viewed by the Court of Claims in *Jamesbury Corp. v. United States*, 518 F.2d 1384, 1387–88, 207 Ct.Cl. 516 (1975) as follows:

"[C]laims 7 and 8 . . . define a ball valve comprising a casing, valve chamber having openings, a rotatable ball in the chamber and having a port, and a sealing ring mounted in the chamber around one of the openings, the sealing ring having a lip extending toward the axis of the ring and engaging the ball. Claims 7 and 8 define the lip as free to bend in the axial direction and increasing in thickness outward in the radial direction of the ring, which projects inwardly toward the axis of the sealing ring and sealingly contacts or engages the ball, and which is free to move in the axial direction of the sealing ring. Claim 8 further defines the lip as having one side face disposed toward the ball and one side face away from the ball, which faces diverge from each other substantially uniformly outward in the radial direction of the ring."

No defense of overclaiming was asserted in that case.

Reduced to simpler terms by the plaintiff in its brief, a ball valve consists of a casing, a sealing ring and a ball. The casing is hollow and has two ends, an inlet end to be connected to an inlet pipe and an outlet end to be connected to an outlet pipe. There is a bore in the ball, which may be rotated to permit fluid flow through the bore, or may rotate a quarter turn so as to block flow through the casing. The sealing ring, as the name implies, is a ring which seals and prevents leakage between the casing and the ball. Describing it even more simply, a ball valve is used to control the flow of liquid and gases in pipelines and is enclosed within a casing so adapted that it can be connected into the pipeline.

While the plaintiff professes "some surprise" at this defendant's motion so late in the day, that reaction is also surprising in view of the long-standing rule of *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 549–50, 58 S.Ct. 662, 665, 82 L.Ed. 1008 (1938) that "[t]he improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

There is nothing to indicate that a ball valve incorporating the new seal performs

**3.** 35 U.S.C. § 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

any "additional or different function" than other ball valves. It does not function in a new manner. It may be more efficient or durable, but it does what ball valves have always done. *Cf. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Even the use of a seat/seal in a ball valve was not new. As the specifications indicate, the objective of the invention is an improved seal and seat. (Col. 1 *ll* 30–39). The patentee may have invented a seat and seal suitable for use in a ball valve, but there is not the slightest doubt that the plaintiff did not invent a ball valve.

The specifications, which teach how to practice the invention, *Application of Roberts,* 470 F.2d 1399, 1403 (C.C.P.A.1973) begin: "This invention relates to ball valves, and more particularly to sealing elements for the valve seat . . . ." (Col. 1 *ll* 15–16). They admit that the valve casing and the ball are conventional[4] and that "[t]he principal object of this invention is to produce a valve seat construction which provides maximum security against leakage, which reduces wear on the seats to a minimum and which ensures smooth opening and closing of the valves." (Col. 1 *ll* 30–34).

Here, as in *Williams Mfg. Co. v. United Shoe Mach. Corp.,* 121 F.2d 273, 279 (6th Cir. 1941), *aff'd,* 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942), "whatever improvement may result is due entirely to the improved element and cannot give rise to valid claims embracing the entire [ball valve] mechanism."

There cannot be any doubt that the plaintiff claims a ball valve, not only a sealing ring. Its brief contends, at page 5, "The operation of the Jamesbury ball valve and how this operation overcame the serious problems inherent in the unsuccessful prior art ball valves is succinctly set forth in the decision of the Court of Claims." A long extract from that opinion, 518 F.2d 1384, 1386–87, is then quoted to support the plaintiff's contention that it invented a ball valve. I excerpt only a few sentences from the extract on which plaintiff relies:

"The patent in suit describes and claims an improved ball valve. . . .

"Prior to the development of the plaintiff's patented valve, ball valves were not generally accepted or used by industry.

. . .

"The ball valve which is the subject matter of the patent in suit solved the problems of temperature variation, pressure variation, and valve wear. The patented ball valve employs a novel sealing ring utilizing a principle different from the compression sealing rings . . . ."

The plaintiff does not relinquish its contention that its patent embraces the entire ball valve, and that it is valid as a patent on a combination because it achieves an improved result. Resourceful as this contention may be, it cannot be twisted to mean that the sealing ring operates to make the valve perform a new *function. Lincoln Engineering, supra.*

### III.

Although the plaintiff is reluctant to relinquish its claims, nevertheless it concedes: "This is not to say that a claim directed to only a sealing ring could not particularly point out and distinctly claim an invention . . . ." Plaintiff's Brief at 8. Even if the claims are broader than permissible, plaintiff seeks to preserve that portion of the claims which it could validly have made. This second, or fall-back, position asks the court to narrow the claim by trimming off its overly broad portion in order to salvage that portion which would be valid. In support of this it cites two cases, to which I now turn.

The Manual of Patent Examining Procedure, Section 706.03j, provides:

"The fact that an applicant has improved one element of a combination which may be *per se* patentable does not entitle him to a claim to the improved element in combination with old elements where the

---

**4.** The Specification, Col. 1 *ll* 40–43, states: "The valve here disclosed includes a ball, a valve casing, and a bonnet, all of which may be of generally conventional construction."

elements perform no new function in the combination."

In *Application of Bernhardt*, 417 F.2d 1395, 57 C.C.P.A. 737 (1969), the Court of Customs and Patent Appeals held that this language does not permit the Patent Office to reject such an "old combination" claim. The court held that a patent could only be rejected on the basis of 35 U.S.C. § 112, which requires that the applicant state "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." It reasoned that if the applicant omitted to mention in its claims the combination in which an improved element was to be used (in this case, the ball valve), this would not make the claims more distinct; a recitation of the combination in the preamble would only lengthen it. It also concluded that without any mention of the combination, a broader monopoly would be claimed: in this case, protection would extend to valve seats whether or not used in ball valves. But the court specifically eschewed any concern "with the soundness of the underlying policy, if any, for old combination rejections." 417 F.2d at 1403.

█ Although the scope of protection was not in issue in *Ex parte Barber*, 187 U.S.P.Q. (BNA) 244 (Pat. & Trademark Office Bd. of Appeals, 1974), the opinion commented favorably on *Bernhardt*. Two of the Examiners in Chief thought that *Lincoln Engineering, supra*, had been legislated out of existence. 187 U.S.P.Q. at 246. I am not about to accede to that view. I find the dissenting opinion in *Ex parte Barber*, which takes the opposite view, more persuasive. It may be that the Patent Office will change its procedural rule in Section 706.03j of the Manual. It is one thing to save an application for a patent from rejection because it claims too much, but it is quite another to permit the use of an overly broad patent against the public. The respect that others have for a patent after the Patent Office has endowed it with a presumption of validity enables the patentee to exact monopoly advantage until someone undertakes the expense of litigation. Viewed abstractly, it would be possible to make a case that the claim is capable of a narrow construction if read in light of the specifications. But such freedom to use the specifications to rescue these unambiguous claims is not permissible.

As the Court said in *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271, 277, 69 S.Ct. 535, 539, 93 L.Ed. 672 (1949):

"We have frequently held that it is the claim which measures the grant to the patentee. . . . While the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention. When they do so to the point of invalidity and are free from ambiguity which might justify resort to the specifications, we agree with the District Court that they are not to be saved because the latter are less inclusive. . . ." (citations omitted).

*See also Trico Products Corp. v. Roberk Co.*, 369 F.Supp. 1146, 1155–56 (D.Conn.), *aff'd*, 490 F.2d 1280 (2d Cir. 1973) (without considering this ground), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974). Inventors desiring the maximum protection no doubt have a difficult task in defining their claims. But when they fail, as in this case, it is because, like the dog in the fable, they grasp too much, and so lose all. Where the public interest in patents is to be protected, the rule is the same as explained in *Holstensson v. V–M Corp., supra*, 325 F.2d at 125:

"It might appear unfair to deny an inventor the fruits of his invention merely because he overclaimed its breadth in his patent application and unjust to allow a third party to appropriate and infringe a true invention because of the failure of a patentee to comply with the patent statute. This might be arguable unless we look upon *Evans v. Eaton* [7 Wheat. 356, 20 U.S. 356, 5 L.Ed. 472] as announcing a policy which, correctly applied, may visit forfeiture of a patent even though it, in part, discloses true invention. That such is the thrust of the majority opinion in *Evans* is exposed by its dissenting

opinion which decries the severity of the rule of the majority opinion. The dissenter observes:

'To declare a patent for a highly useful improvement absolutely void, merely for a defective specification, if this be one, is a very high penalty, and should not be lightly inflicted unless rendered absolutely necessary by law.' (7 Wheat. 448, 20 U.S. 448, 5 L.Ed. 495).

"In contemplating this seemingly drastic rule, we bear in mind that there is no natural or common law right to a monopoly of an invention. Robinson Treatise on the Law of Patents (1890) § 24. By Constitutional grant, Article I, § 8, Clause 8, Congress has power to give inventors, for a limited time, 'the exclusive right to their respective discoveries.' Applicants for such monopolies must comply with the requirements that Congress insists be met as a condition to exercising such monopoly. The seeming harshness of this rule is further ameliorated when we keep in mind that an inventor may gain monopoly for an inventive improvement to an existing device simply by limiting his claim to that which he did invent. In the case before us, this could have been accomplished by a narrowing of Claim 1, or by presentation of a separate claim limited to the spindle type record dropper which, for this opinion, it is assumed presented invention. In Sweden, Holstensson did this. Swedish patent No. 97,122 was taken out on the entire machine, while patent No. 97,123 was limited to the spindle record dropper. The same procedure could have been followed here, but was not."

There being no genuine issue as to any material fact, the defendant is entitled to judgment as a matter of law that claims 7 and 8 of the patent in issue are invalid. It is

SO ORDERED.