**JAMESBURY CORP.,**
**Plaintiff–Appellant,**

**v.**

**LITTON INDUSTRIAL PRODUCTS,**
**INC., Defendant–Appellee.**

**No. 87–1106.**

United States Court of Appeals,
Federal Circuit.

Feb. 10, 1988.

Robert C. Miller of Oblon, Fisher, Spivak, McClelland & Maier, Arlington, Va., argued for plaintiff-appellant. With him on the brief was Arthur I. Neustadt of Oblon, Fisher, Spivak, McClelland & Maier. Of counsel were Charles L. Gholz, of Oblon, Fisher, Spivak, McClelland & Maier and Richard H. Berneike, of Combustion Engineering, Inc.

Donald R. Dunner, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for defendant-appellee.

Before SMITH, NIES, and ARCHER, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Jamesbury Corp. (Jamesbury) sued Litton Industrial Products, Inc. (Litton), for infringement of its patent, United States patent No. 2,945,666 (the '666 patent). The United States District Court for the District of Connecticut granted summary judgment in favor of Litton on the issues of laches and estoppel.[1] We affirm.

### Issues

(1) Whether the district court erred in holding that the law of the case doctrine did not preclude it from reconsidering the initial denial of summary judgment in light of the subsequent history of the case.

(2) Whether the district court erred in holding that Jamesbury was barred by laches from recovering damages which occurred prior to the filing of its complaint.

(3) Whether the district court erred in holding that Jamesbury's suit for infringement was barred by equitable estoppel.

### I. Background

(A) *Litigation Involving the '666 Patent.*

The '666 patent, which relates to the manufacture of ball valves, was issued on July 19, 1960, and assigned to Jamesbury. The '666 patent has been the subject of numerous suits since 1962. First, Jamesbury sued Pacific Valves, Inc. (Pacific Valves), for infringement in New Jersey in February 1962. Then, on July 10, 1963, Jamesbury filed suit against the United States in the Court of Claims for infringement, alleging that "the defendant has used numerous ball valves embodying the invention manufactured by Electric Boat Division, General Dynamics Corp., Groton, Connecticut, by Pacific Valves, Inc., Long Beach, California, and others." On December 16, 1963, in response to a Government request to identify the "others," Jamesbury named 10 companies, including Worcester Valve Co. (Worcester Valve) and Litton's predecessor in interest, UTD Corp., Contromatics Division (Contromatics).[2]

The Pacific Valves litigation was settled, and the case was dismissed in April 1965. In May 1965, Jamesbury filed suit against Worcester Valve in Massachusetts, and against the Lunkenheimer Co. in Ohio. The Court of Claims action was amended in June 1965 to name Worcester Valve specifically as an infringer. On May 16, 1967, Commissioner Lane issued a recommended decision in the Court of Claims case finding that claims 7 and 8 of the patent were valid and infringed by the Government's use of valves made by Worcester Valve and Electric Boat Division. Jamesbury also filed a declaratory judgment action in Texas against KTM Industries on October 30, 1970.[3]

---

**1.** *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 646 F.Supp. 1495, 1 USPQ2d 1717 (D.Conn. 1986).

**2.** Contromatics Corp. began operations in 1961. UTD Corp. purchased Contromatics in 1967.

Litton Industries, Inc., then purchased UTD Corp. in 1968.

**3.** This case was dismissed in 1980 for lack of jurisdiction. *Jamesbury Corp. v. Kitamura Valve Mfg. Co.,* 484 F.Supp. 533 (S.D.Tex.1980).

Jamesbury's ownership of the '666 patent was challenged in the Worcester Valve litigation by an intervenor, the E.W. Bliss Co. The district court severed the ownership issue, and the Worcester Valve, Lunkenheimer, and Court of Claims cases were stayed pending determination of ownership. The United States Court of Appeals for the First Circuit affirmed the district court's determination that Jamesbury was the rightful owner of the '666 patent on May 26, 1971.[4] On June 29, 1971, Jamesbury moved to remand the Court of Claims case to its trial division for further proceedings and findings on a question of inventorship, raised in the Worcester Valve case but not decided, and on additional prior art brought up by Worcester Valve in settlement negotiations. This motion was granted on October 1, 1971. The Worcester Valve litigation was settled in March 1972.

On September 20, 1974, Trial Judge Colaianni issued a supplemental opinion in the Court of Claims case concluding that claims 7 and 8 of the patent were valid and infringed. The Court of Claims affirmed and adopted the opinions of Commissioner Lane and Judge Colaianni on July 11, 1975.[5] In February 1980, Judge Colaianni filed a recommended decision assessing damages of $10.2 million. Of the total, 20 percent was attributable to ball valves manufactured by Contromatics.[6] The case was later settled for $8 million.

(B) *The Litton Litigation.*

Jamesbury wrote to the president of UTD Corp. on October 12, 1967, advising him that, in the opinion of Jamesbury's Engineering Department, Contromatics' ball valves infringed the '666 patent and that Jamesbury was prepared to discuss a licensing agreement. On October 31, 1967,

UTD responded that its patent attorneys had studied the patent and had concluded that there was no infringement. UTD suggested a meeting with Jamesbury to discuss the issue. Jamesbury accepted UTD's invitation in a letter which included a copy of Commissioner Lane's ruling in the Court of Claims action. The letter noted that the patent had been held valid and infringed by the Government which "purchases its valves from various suppliers." It closed with a statement that Jamesbury's patent attorney was available to discuss its position with UTD's attorneys. A meeting was held in December, but the issue was not resolved. On January 5, 1968, Jamesbury wrote to UTD that

> [w]e have reported your position to our attorneys and the subject is under careful consideration.

Jamesbury had no further contact with UTD until this suit was filed on February 10, 1976.

Litton moved for dismissal based on the defenses of laches and equitable estoppel. Judge Blumenfeld, the district court judge originally assigned to this case, treated it as a motion for summary judgment since both parties relied on affidavits and other matters outside the pleadings. The motion was denied because the court determined that there were triable issues of fact concerning both defenses.[7] Litton then moved for summary judgment on the ground that claims 7 and 8 were invalid for overclaiming. Judge Blumenfeld granted this motion, but the Second Circuit reversed because the test used by the district court to determine the patentability of a combination having a novel element was too narrow.[8]

---

**4.** *Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205, 170 USPQ 177 (1st Cir.1971).

**5.** *Jamesbury Corp. v. United States*, 518 F.2d 1384, 207 Ct.Cl. 516, 187 USPQ 720 (1975).

**6.** The only valves actually determined to be infringing were the products of parties specifically named in the Court of Claims suit. However, after the court ruled in Jamesbury's favor on the infringement issue, the Government apparently conceded liability for the Contromatics

valve which was then included in the damage phase of the case.

**7.** *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 427 F.Supp. 756, 195 USPQ 65 (D.Conn.1977).

**8.** *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 442 F.Supp. 266, 196 USPQ 544 (D.Conn.1977), *rev'd*, 586 F.2d 917, 199 USPQ 641 (2d Cir.1978), *cert. denied*, 440 U.S. 961, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979).

The case was tried during September 1983. At the close of the evidence, Litton moved for a directed verdict on several issues, including laches. Its motions were denied, and the case was submitted to the jury. The jury returned a verdict for Litton, responding to a special interrogatory that the claims were invalid for lack of novelty. The jury did not reach any other issue because of the way the interrogatories were constructed.[9] Jamesbury appealed the invalidity determination to this court. Litton did not cross-appeal the denial of its motion for a directed verdict on the laches issue which Jamesbury asserts here it should have done. We reversed the invalidity judgment, concluding that the jury instructions had been prejudicial. We also held that the district court erred in not granting Jamesbury's motion for judgment n.o.v. with respect to validity. The case was remanded for disposition of the other issues raised at trial.[10]

On remand, Jamesbury requested that Judge Blumenfeld recuse himself which he did, and the case was reassigned to Judge Dorsey. Litton moved for summary judgment on the issues of laches, estoppel, and prejudgment interest. Judge Dorsey granted the motion on the defenses of laches and estoppel. Jamesbury appeals the November 5, 1986, grant of summary judgment by the district court on the laches and estoppel defenses.

## II. Summary Judgment

■ Summary judgment, in a patent case as in any other type of case, is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[11] The district court must view the evidence in the light most favorable to the nonmoving party, and any doubt as to the existence of issues of material fact must be resolved in favor of the party opposing the motion.[12] The movant bears the burden of demonstrating the absence of any genuine issue of material fact.[13] However, when the movant has supported his motion as provided by Fed.R.Civ.P. 56(c), then the opposing party has the burden of coming forward with evidence directed to specific facts showing that there is a genuine issue for trial.[14] Mere denials or conclusory statements are not sufficient.[15]

In reviewing the grant of summary judgment, we must determine whether the district court erred in concluding that there were no genuine issues of fact, and that Litton was entitled to judgment as a matter of law.[16] In support of its motion for summary judgment, Litton submitted a list of

9. Jury interrogatory No. 1 read as follows:
"Does the ball valve construction shown and described in the Saunders British patent or any other prior art differ in any significant particulars from the ball valve defined by the express language of claims 7 and 8 of the Freeman patent?
"As to claim 7 Yes ___ No _X_
"As to claim 8 Yes ___ No _X_
&ast;&ast;&ast;&ast;&ast;&ast;
"If you answer 'No' as to both claim 7 and claim 8, do not answer any further questions."
The remaining questions were directed to infringement, laches, estoppel and damages. In accordance with the above direction, the jury answered only interrogatory No. 1.

10. *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 756 F.2d 1556, 225 U.S.P.Q. 253 (Fed.Cir.1985).

11. *Hodosh v. Block Drug Co.,* 786 F.2d 1136, 1141, 229 U.S.P.Q. 182, 186 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835, 221 U.S.P.Q. 561, 564 (Fed.Cir.1984); *D.L. Auld Co. v.*

*Chroma Graphics Corp.,* 714 F.2d 1144, 1146, 219 U.S.P.Q. 13, 15 (Fed.Cir.1983); *Chore–Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778–79, 218 U.S.P.Q. 673, 675 (Fed.Cir.1983).

12. *Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1546, 222 USPQ 562, 565–66 (Fed.Cir.1984); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1571, 220 USPQ 584, 588 (Fed.Cir.1984).

13. *Hodosh,* 786 F.2d at 1141, 229 USPQ at 186.

14. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562, 4 U.S.P.Q.2d 1793, — (Fed.Cir.1987); *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1571, 230 USPQ 385, 389 (Fed.Cir.1986).

15. *Hodosh,* 786 F.2d at 1141, 229 USPQ at 186.

16. *See Lemelson v. TRW, Inc.,* 760 F.2d 1254, 1260, 225 USPQ 697, 701 (Fed.Cir.1985).

26 "Undisputed Facts." These "facts" came from admissions by Jamesbury, from responses to discovery requests, and from depositions and trial testimony. Jamesbury failed to challenge any of the facts in its response to Litton's motion. Instead, its statement identifying the issues of material fact for trial (required by local rule) is supported solely by statements taken from the district court's earlier opinion denying summary judgment. Nothing which appears in Jamesbury's statement identifies any specific evidence raising a disputed issue of material fact. Therefore, the district court did not err in concluding that there were no factual disputes precluding summary judgment.

■ Jamesbury claims the district court erroneously assumed that (1) there was infringement by Contromatics beginning in 1963 and (2) Jamesbury was aware of it because in 1963 Jamesbury asserted that valves made by Contromatics for the Government infringed Jamesbury's patent. Jamesbury argues that it could not have charged Contromatics with infringement in 1963 because, by virtue of 28 U.S.C. § 1498 (1982),[17] the Government was infringing, not Contromatics. The problem with this argument is that the district court did not *assume* what Jamesbury suggests that it did. The court simply relied on the "Undisputed Facts" which Litton had presented in support of its motion for summary judgment and which Jamesbury had not challenged.[18] Undisputed Fact No. 5 is a clear and unequivocal allegation that *Contromatics* was infringing in 1963. If Jamesbury wanted to challenge that allegation by claiming that it was unaware of nongovernmental infringing sales by Contromatics, it should have done so in the district court. Moreover, as Litton points out, the record does not support the restricted interpretation of the admission now asserted by Jamesbury. Jamesbury cannot raise the issue in this court because it failed to raise the question in the district court. As the court explained in *Chemical Engineering Corp. v. Essef Industries, Inc.:*[19]

> [W]here a non-movant has failed to establish specific fact issues in response to a Rule 56 motion, he cannot later be heard to attack the judgment on the basis of matters that, had he but raised them earlier, might have precluded its grant. * * *

Having determined that the district court did not err in concluding there were no genuine issues of material fact left for trial, we must now decide if the court erred in holding that Litton was entitled to judgment as a matter of law.

### III. The Law of the Case Doctrine

Jamesbury contends the law of the case on the issue of laches was established by the denial of Litton's original motion for summary judgment, and the denial of its motion for a directed verdict and failure to cross-appeal therefrom. According to Jamesbury, the law of the case is that laches is inappropriate for summary judgment, and the district court erred in departing from the law of the case in granting Litton's current motion for summary judgment.

---

**17.** 28 U.S.C. § 1498(a) provides in pertinent part:

"Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture."

**18.** Undisputed Fact No. 5 states:

"Jamesbury became convinced that Contromatics was infringing the patent-in-suit no later than December of 1963. On July 10, Jamesbury filed suit against the U.S. Government in the Court of Claims for infringement of the patent-in-suit, alleging in part:

"The defendant ... has used numerous ball valves embodying the invention manufactured by Electric Boat Division, General Dynamics Corp., Groton, Connecticut, by Pacific Valves, Inc., Long Beach, California, *and others.*

(emphasis added). In response to a request by the Government to identify 'the others' mentioned in the complaint, on December 16, 1963 Jamesbury identified ten companies, including Contromatics and Worcester Valve. * * *"

**19.** *Chemical Eng'g,* 795 F.2d at 1571, 230 USPQ at 390.

■ The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts.[20] The doctrine requires a court to follow the decision on a question made previously during the case. It is applied more or less strictly depending on the circumstances of the case. When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand.[21] At the trial level however, the law of the case is "little more than a management practice to permit logical progression toward judgment."[22] Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.[23]

■ The district court rejected Jamesbury's law of the case argument because neither the denial of the motion for directed verdict nor the original summary judgment motion had conclusively addressed Litton's arguments. Jamesbury argues that the district court erred because it did not consider the "crucial fact" that Litton failed to cross-appeal the denial of the directed verdict. But Litton's failure to cross-appeal the denial of its motion for a directed verdict on laches has no effect on

the law of the case for the simple reason that Litton could not have cross-appealed that ruling. Only judgments can be appealed,[24] and the judgment in this case was of the invalidity of the patent. No judgment was entered on the laches defense, so Litton could not have cross-appealed the denial of its motion for directed verdict on that issue.[25] In addition, only a party adversely affected by a judgment can appeal,[26] and Litton was not adversely affected by the invalidity judgment. Therefore, it is clear that Litton could not have cross-appealed the denial of its motion for directed verdict on laches, and its failure to do so has no effect on the law of the case.

■ As the district court noted, there is a judicial preference in favor of granting a judgment n.o.v. over a directed verdict. The rationale behind the preference is the effect of an appellate court's reversal of a judgment in each situation. With a directed verdict, the entire case must be retried if the judgment is overturned, while with a judgment n.o.v., the jury verdict can be entered as the judgment should the appellate court reverse. Thus, it is in the interest of efficient judicial administration for a court to withhold ruling on a motion for directed verdict in favor of deciding a motion for judgment n.o.v.[27] Therefore, the district court was correct in holding that the denial of Litton's motion for directed verdict on laches did not conclusively determine that issue.

**20.** 1B J. MOORE, J. LUCAS, T. CURRIER, MOORE'S FEDERAL PRACTICE, ¶ 0.404[1] at 117–18 (2d ed. 1984). This court has recognized that the law of the case doctrine applies in patent cases. *See, e.g., Smith Int'l, Inc. v. Hughes Tool Co.,* 759 F.2d 1572, 1576, 225 USPQ 889, 891 (Fed.Cir.1985). Second Circuit law applies to the law of the case doctrine because it is a procedural matter not unique to patent law. *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir. 1984).

**21.** *United States v. Cirami,* 563 F.2d 26 (2d Cir. 1977).

**22.** 1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] at 118.

**23.** *First Nat'l Bank of Hollywood v. American Foam Rubber Corp.,* 530 F.2d 450 (2d Cir.), *cert.*

denied, 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976).

**24.** *See Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1510, 220 USPQ 929, 934 (Fed. Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

**25.** *See DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 422, 231 USPQ 276, 276 (Fed.Cir.1986).

**26.** *Public Serv. Comm'n v. Brashear Freight Lines, Inc.,* 306 U.S. 204, 59 S.Ct. 480, 83 L.Ed. 608 (1939); *Koniag, Inc., Village of Uyak v. Andrus,* 580 F.2d 601, 605 n. 3 (D.C.Cir.), *cert. denied,* 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978); *Chouinard v. Chouinard,* 568 F.2d 430, 433 (5th Cir.1978).

**27.** *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 166 n. 2 (2d Cir.1980).

Jamesbury also argues that the denial of the original summary judgment motion in 1977 established the law of the case that the laches question was inappropriate for summary judgment, and that the district court erred in reconsidering the motion. Jamesbury contends that the grounds justifying reconsideration of a prior decision by a court are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice, and that Litton did not assert any of these grounds. However, the cases cited by Jamesbury all relate to an appellate court reconsidering its own decision [28] or the decision of another appellate court.[29] As discussed above, there are different facets to the law of the case doctrine depending on the circumstances involved in the particular case. The standard to be applied by a district court in reconsidering a motion for summary judgment was set out in *Corporacion de Mercadeo Agricola v. Mellon Bank International:* [30]

[O]n a renewed motion for summary judgment before a second judge, the district court must balance the need for finality against the forcefulness of any new evidence and the demands of justice. With respect to a non-appealable denial of summary judgment, the law of the case is not a limit on the court's jurisdiction, but a rule of practice which may be departed from in the sound discretion of the district court. The first judge always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court. *A fortiori*, if the first judge can change his mind after

denying summary judgment, and change his ruling, a second judge should have and does have the power to do so as well.

The district court concluded that the long history of this case, which includes a full jury trial, required it to consider events subsequent to the original denial. Jamesbury's only response to this controlling case law was to argue that the court's balancing was wrong because it considered the delay from 1963 to 1967. Jamesbury argues that this was not really a delay because the Government, not Contromatics, was infringing during that time, and it was presumptively reasonable because it was less than 6 years. As was discussed previously, the court did not err in considering the 1963 to 1967 period.

This case was before the district court for 9 years, and much is known now that was not known at the time of the original motion. A full trial has been held, and Jamesbury had the opportunity to present all of the evidence it had on the laches defense. The only reason this issue was not resolved at trial is the phrasing of the jury instructions. Therefore, the district court did not err in considering all of the evidence in the record in deciding the second summary judgment motion.

## IV. Laches

■■■ Laches is an equitable defense which depends on consideration of all of the facts in the particular case. It is a matter within the trial court's discretion and will not be set aside absent a showing of abuse of discretion.[31] As applied in patent infringement cases, it bars recovery of damages for any infringement occurring prior to the filing of the suit. In order to

**28.** *Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985); *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Short v. United States,* 661 F.2d 150, 228 Ct.Cl. 535 (1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1738, 72 L.Ed.2d 153 (1982).

**29.** *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983).

**30.** *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l,* 608 F.2d 43, 48 (2d Cir.1979) (citing *Dictograph Prods. Co. v. Sonotone Corp.,* 230 F.2d 131 (2d Cir.), *cert. dismissed,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956)).

**31.** *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1163, 208 U.S.P.Q. 545 (6th Cir.1980); *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1325, 206 USPQ 577, 586 (5th Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980).

establish a laches defense, the defendant must prove an unreasonable and inexcusable delay in the assertion of the claim and material prejudice to the defendant resulting from the delay.[32] Where the delay in filing the suit exceeds 6 years, the court will presume the delay was unreasonable and prejudicial to the defendant. The burden is then on the patent owner to prove the existence and reasonableness of an excuse for the delay, as well as to show the lack of prejudice to the infringer.[33]

Both Jamesbury and Litton agree that the presumption applies in this case, but they disagree as to the length of the delay. Jamesbury claims the delay is only 8 years, from the time it contacted Contromatics about infringement in 1967–68 until it filed suit in 1976. Litton, on the other hand, argues that the delay is 12 years, running from the time Jamesbury named Contromatics as producing infringing valves for the Government in the Court of Claims action in 1963 until it filed suit. In determining the length of delay for laches, a court must look at the time the patentee knew, or in the exercise of reasonable diligence should have known, of the alleged infringing activity.[34] Here, Jamesbury either knew, or should have known, of Contromatics' infringement in 1963 since it named Contromatics in the Court of Claims case as an infringer at that time. Therefore, the district court correctly considered the length of Jamesbury's delay for purposes of laches to be 12 years.

The burden was thus on Jamesbury to excuse its delay. Jamesbury alleges that its involvement in other litigation constitutes an adequate excuse for its delay in suing Litton. Many courts have recognized that involvement in other enforcement litigation may excuse a patentee's delay in suing an alleged infringer.[35] In *Leinoff v. Louis Milona & Sons, Inc.,*[36] this court suggested that litigation involving the patent might be an adequate excuse for delay in filing suit in the proper circumstances.

> It may well be, though we do not now so hold, that suit on one or more test cases, instead of suing every known infringer, was reasonable in light of the high cost of patent litigation and the comparatively moderate amounts recoverable by our patentee per infringer, and if the infringers understood there was no intent to condone their infringements. * * *

We hold that a patentee's involvement in litigation against one or more infringers may excuse delay in enforcing the patent against another infringer if the infringer understands that the patentee is not acquiescing in the infringement.[37]

Although courts have uniformly recognized that involvement in other litigation may excuse delay in filing suit against alleged infringers, they have been less consistent regarding the circumstances under which it may be appropriately invoked. Several early cases held that merely filing suit against one infringer was sufficient to excuse delay in filing against another infringer.[38] More recent cases have rejected

**32.** *Leinoff v. Louis Milona & Sons, Inc.,* 726 F.2d 734, 741, 220 USPQ 845, 850 (Fed.Cir.1984); *A.C. Aukerman Co. v. Miller Formless Co.,* 693 F.2d 697, 699, 216 USPQ 863, 864 (7th Cir.1982).

**33.** *Leinoff,* 726 F.2d at 741–42, 220 USPQ at 850.

**34.** *Jensen v. Western Irrigation & Mfg., Inc.,* 650 F.2d 165, 168 (9th Cir.1980).

**35.** *See, e.g., Clair v. Kastar, Inc.,* 148 F.2d 644, 65 USPQ 143 (2d Cir.), *cert. denied,* 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 459 (1945); *Jenn–Air Corp. v. Penn Ventilator Co.,* 464 F.2d 48, 174 USPQ 419 (3d Cir.1972); *Studiengesellschaft,* 616 F.2d 1315, 206 U.S.P.Q. 577 (5th Cir.1980); *American Home Prods. Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120, 179 USPQ 196 (6th Cir.1973), *cert.*

denied, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974); *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 186 USPQ 1 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Montgomery Ward & Co. v. Clair,* 123 F.2d 878, 51 USPQ 499 (8th Cir.1941); *Jensen,* 650 F.2d 165 (9th Cir.1980).

**36.** 726 F.2d at 742, 220 USPQ at 851.

**37.** *See Hottel Corp. v. Seaman Corp.,* 833 F.2d 1570 (Fed.Cir.1987).

**38.** *Montgomery Ward,* 123 F.2d 878 ("A suit pending to sustain the validity of a patent is notice to all infringers of the insistence of the patentee upon his claimed rights."); *Clair v. Kastar,* 148 F.2d 644.

the premise that involvement in other litigation automatically excuses delay. These cases have required the patentee to give notice to the alleged infringer of the existence of the other litigation and of the patent owner's intent to enforce its rights against the alleged infringer after the other litigation ends.[39] In *Watkins v. Northwestern Ohio Tractor Pullers Association*,[40] the court explained why notice to the infringer is necessary:

> If the patentee does act to enforce his patent and the alleged infringer is informed of it, he cannot reasonably expect his business will remain unmolested. However, if the alleged infringer does not know about the patentee's actions to enforce the patent, the belief that he will be left alone is still reasonable. The alleged infringer cannot know the patentee's intentions unless the patentee tells him. Notice of the other litigation informs the alleged infringer that the patentee does not intend to leave him alone * * *.

We agree that, in order to excuse delay based on other litigation, the patentee must give notice to the alleged infringer of the existence of the other litigation and of an intent to enforce its rights against the infringer at the conclusion of the other litigation.[41]

■ In this case, there is no question that Jamesbury notified Contromatics of the Court of Claims litigation, so it has met the first part of the test. It cannot meet the second part, however. Jamesbury accused Contromatics of infringement in the October 12, 1967, letter and offered to license the patent. Contromatics responded by denying infringement and suggested a meeting to discuss the issue. The meeting did not settle the question, and Jamesbury's final contact with Contromatics, prior to filing suit 8 years later, indicated only that it had submitted Contromatics' position to its attorneys and the subject was

under consideration. Jamesbury never clearly indicated that it intended to enforce its rights against Contromatics after the Court of Claims litigation ended. Given the equivocal nature of Jamesbury's contacts with Contromatics, Jamesbury failed to give adequate notice to Contromatics, as concluded by the district court.

■ Litton argues to this court, as it did to the district court, that Jamesbury's "pattern of litigation" suggested that it did not intend to sue Litton. Litton contends that Jamesbury promptly sued other infringers during the pendency of the Court of Claims litigation, and, since Jamesbury did not sue it during the Court of Claims litigation, it reasonably concluded that Jamesbury did not intend to sue it. The district court properly rejected this argument. As the district court noted, the rationale for the other litigation excuse, that the high cost of patent litigation and the comparatively small amounts recoverable from each infringer justify not requiring the patent owner to sue all infringers at the same time, would be defeated by accepting Litton's position.

The district court did not abuse its discretion in granting summary judgment to Litton on the issue of laches.

## V. Estoppel

Like laches, estoppel depends on the facts of the particular case and is a matter within the court's discretion which will not be set aside absent a showing of abuse of discretion.[42] However, although the defenses of laches and estoppel are frequently raised together, they have different requirements and different effects on the rights of the patent owner. In order to prove estoppel, the alleged infringer must show (1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the infringer, (3) affirmative conduct by the patentee inducing the belief that it abandoned

---

39. *A.C. Aukerman,* 693 F.2d at 700, 216 USPQ at 865; *Jensen,* 650 F.2d at 168; *Watkins,* 630 F.2d at 1163; *Studiengesellschaft,* 616 F.2d at 1328, 206 USPQ at 589; *American Home Prods.,* 483 F.2d at 1124, 179 USPQ at 198.

40. 630 F.2d at 1163.

41. *See Hottel Corp.,* at 1573.

42. *Studiengesellschaft,* 616 F.2d at 1325, 206 USPQ at 586.

its claims against the alleged infringer, and (4) detrimental reliance by the infringer.[43] Estoppel prevents the patent owner from obtaining prospective relief, either an injunction or damages for infringement occurring after the filing of suit.[44]

The fundamental differences between laches and estoppel suggest that the presumptions which apply to laches should not apply to estoppel. Estoppel requires representations or conduct by the patentee from which the alleged infringer could reasonably infer that the patentee had abandoned his claim. "For silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to 'bad faith.'"[45] The silence must be sufficient "to induce the alleged infringer to reasonably infer that the patentee has abandoned his patent claims" against the alleged infringer.[46]

The court in *Naxon Telesign Corp. v. Bunker Ramo Corp.*,[47] explained why the burden of proving prejudice should not be shifted from the infringer.

First, the consequence of a finding of estoppel completely bars a plaintiff from asserting its rights. Moreover, the nature of estoppel is based on a misleading act of the plaintiff and detrimental reliance by the defendant. [Footnote omitted.] * * * Therefore, in light of the severity of the result of a finding of estoppel, a court should not lightly presume injury to the party raising the defense. * * *

Secondly, many of the cases which the defendants and the district court relied on regarding the shifting of the burden of proof are either cases dealing with laches [footnote omitted] or cases which found estoppel, but did not shift the burden in doing so. While there is broad language in those cases which arguably could be applied in the estoppel context, it is better to limit such decisions to the facts presented in each case. * * *

We agree with the reasoning of the Seventh Circuit and hold that the burden of proof in an estoppel defense cannot be shifted from the alleged infringer.

In this case, the district court relied on the finding of laches to establish the first two elements of estoppel. However, in its discussion of laches, the court specifically dealt with both unreasonable delay and prejudice absent the presumptions. First, we note that the period of delay for estoppel is not necessarily the same as the delay for laches. With estoppel, delay is measured from the time of the misrepresentation or the beginning of the misleading silence. Here, the delay began when Jamesbury notified Contromatics that it had reported Contromatics' position to its attorneys and was considering the matter carefully. The delay by Jamesbury from the time it sent the letter to Contromatics until it filed suit was unreasonable.

The district court also considered the question of material prejudice to Contromatics absent the presumption. The court noted the testimony of Litton's president that had he been president of Contromatics in 1967–68 and known of the allegation of infringement by Jamesbury, he would have sold the corporation rather than make continued capital investments. The court concluded that those investments were uncontroverted evidence of material prejudice. We agree that the capital investments made by Contromatics constitute material prejudice.[48]

The next element of estoppel is a misrepresentation or misleading silence by the

**43.** *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1317, 219 USPQ 1142, 1153 (Fed.Cir.1983); *Hottel Corp.*, at 1573.

**44.** *A.C. Aukerman*, 693 F.2d at 701, 216 USPQ at 866; *Jensen*, 650 F.2d at 169; *Studiengesellschaft*, 616 F.2d at 1325, 206 USPQ at 587.

**45.** *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 350, 201 USPQ 433, 436 (6th Cir.1979).

**46.** *Hottel Corp.*, at 1574.

**47.** *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1264, 216 USPQ 658, 663 (7th Cir.1982).

**48.** *Studiengesellschaft*, 616 F.2d at 1326–27, 206 USPQ at 590; *American Home Prods.*, 483 F.2d at 1124, 179 USPQ at 199; *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1378, 174 USPQ 423, 425 (7th Cir.1972).

patent owner. In 1968, Jamesbury informed Contromatics that it was considering Contromatics' position denying infringement. Jamesbury then had an obligation to inform Contromatics of the results of its "careful consideration." Jamesbury's silence in the face of its obligation to inform Contromatics of the result of its consideration reasonably could have led Contromatics to conclude either that Jamesbury had determined that Contromatics was not infringing or that it would ignore the infringement. Thus, the third element of estoppel is present.

The final element of estoppel is detrimental reliance by the infringer. The district court found detrimental reliance based on the investments in the manufacture of ball valves by Contromatics, and Jamesbury's failure to submit any evidence in rebuttal on this issue. Jamesbury argues that Litton cannot satisfy this element because the notice was given to Contromatics, and Litton cannot rely on the notice to Contromatics. As the district court noted, Jamesbury's position is inconsistent. If Litton cannot rely on the notice to Contromatics, then it is clear that Litton had no notice at all, and Jamesbury's claim would be defeated by both laches and estoppel. The district court properly held Litton liable for the knowledge of Contromatics of the allegation of infringement because Litton was the successor in interest to Contromatics.[49] The corollary to that holding is that Litton is entitled to rely on the lack of communication to Contromatics, as well as to itself, following the letter.

Jamesbury also contends that the district court erred in stating that it had produced no evidence in support of its claim that Litton relied on a noninfringement opinion from its counsel rather than on Jamesbury's inaction. Jamesbury argues that it produced evidence at trial of the existence of the noninfringement opinion from which an inference can be drawn that Contromatics relied on that opinion rather than any inaction by Jamesbury. Jamesbury, in the motion for summary judgment which is the subject of this appeal, did not assert that this was a material question of fact before the district court and cannot raise it here.[50]

Therefore, the district court did not abuse its discretion in granting summary judgment on the issue of estoppel.

## VI. Conclusion

The district court properly determined that the law of the case did not prevent it from reconsidering Litton's motion for summary judgment. The court also correctly held that Litton was entitled to summary judgment on the defenses of laches and estoppel. We affirm the judgment of the United States District Court for the District of Connecticut.

AFFIRMED.

NIES, Circuit Judge,
concurring-in-part.

I join Judge Smith's opinion except Part V on estoppel in which I concur in result. We are reviewing a summary judgment grant. Therefore, it is only necessary here to answer Jamesbury's single argument, namely, that there is a disputed fact issue with respect to Litton's detrimental reliance. On that point, I agree that there is no presumption arising from a six-year (or even longer) delay that the alleged infringer detrimentally relied on a patentee's acts. I also agree that the infringer here affirmatively established the detrimental reliance element of estoppel and that there is no genuine factual dispute on the matter.

I join Judge Archer's opinion, which, accordingly, becomes the majority opinion on the issue of estoppel.

ARCHER, Circuit Judge,
concurring-in-part.

I join the majority opinion except Part V on estoppel in which I concur in the result.

**49.** *American Home Prods. Corp. v. Lockwood Mfg. Co.*, 173 USPQ 486, 498 (S.D.Ohio 1972) ("From an infringement, laches, discretion, or good conscience point of view, the insertion of 'corporate entity' into this controversy is not in the ends of justice."), *aff'd*, 483 F.2d 1120, 179 USPQ 196 (6th Cir.1973); *Autoclave Eng'rs, Inc. v. Duriron Co.*, 190 USPQ 125 (E.D.Pa.1976).

**50.** *Chemical Eng'g*, 795 F.2d at 1571, 230 USPQ at 390.

In Part V, the opinion unnecessarily decides issues not yet resolved by this court. In this case the first two elements of estoppel—unreasonable and inexcusable delay in filing suit and prejudice to the infringer—have been affirmatively established by the evidence without resort to any presumption. Accordingly, it is inappropriate to decide whether the presumptions applicable in a laches analysis apply to the first two elements of estoppel.

I also agree with the concurrence-in-part of Judge Nies.